UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
- - - - - - - - - - -

UNITED STATES OF AMERICA,

Plaintiff, No. 1:23-CR-118

vs. HON. PAUL L. MALONEY
U.S. DISTRICT JUDGE

LETICIA GALLARZO,

Defendant.
_______________________________/

# UNITED STATES' SENTENCING MEMORANDUM

## I. INTRODUCTION

Defendant is very familiar to this Court. Having been convicted of impersonating a nurse on four separate occasions in the United States District Court for the Southern District of Texas, she received a 14-month prison sentence, and her supervised release was transferred here. She violated her supervised release and came before this Court on two occasions, receiving an additional 14-month sentence for using the identity of another individual and shoplifting.

And here we are again. Only about one year after her supervised release for her federal conviction ended, she obtained employment as a nurse using the identity of an actual person licensed as a nurse in Michigan. In the course of the present charged conduct, she created false nursing licenses, a false Michigan driver's license, false diplomas from Davenport and George Washington University, and claimed to have qualifications in nursing that she does not possess. The lack of qualifications did not deter her. She acted not only as a nurse, but served as a charge nurse and unit supervisor where she not only oversaw patient care but supervised nurses and others assisting in such care. And then she doubled-down. While on bond awaiting sentencing before

this Court – a bond explicitly precluding her from employment in the medical field in **any** capacity – she absconded to Illinois and amazingly stole the identity of a licensed Physician Assistant to obtain employment at a medical facility where she administered Botox and other shots to patients.

Her actions have earned her a loss of acceptance of responsibility and an increase in her guidelines for both obstruction of justice and reckless or conscious risk of serious bodily harm. Additionally, because the guidelines do not capture the danger she presents to the public due to her demonstrated inability to understand that she cannot practice as a licensed medical professional, this Court should grant the upward variance recommended by the Probation Officer.

## II. RELEVANT BACKGROUND/OFFENSE CONDUCT

The relevant offense conduct is summarized in detail in the Presentence Report, ECF 45, PSR, ¶s 16-38. This Court discharged Defendant from her supervised release relating to her federal conviction in the Southern District of Texas on August 10, 2021. PSR, ¶ 70. Just over a year later, on August 16, 2022, Defendant sought employment as a clinical nurse with a facility in Bangor, Michigan, claiming to have a nursing degree from Davenport University and utilizing the Michigan nursing license of the victim, L.T.C.P. Fortunately, she did not obtain employment.

The next week, Defendant applied for and obtained employment with L.H.C.C., a nursing home with facilities in West Michigan. PSR, ¶ 22. She again claimed she had a nursing degree from Davenport University and used the Michigan nursing license of victim L.T.C.P. By November 2022, she transferred to another facility of L.H.C.C. and became the unit manager R.N., meaning she supervised the performance of nurses and others during her shifts. PSR, ¶ 24.

Not surprisingly, Defendant had performance problems as she pretended to be a properly licensed and trained nurse when she was not. PSR, ¶ 25. As a result, the government believes that she claimed to have an emergency requiring her to be away from work and applied for new

employment as a nurse at another facility, C.H.G., just in case she was fired by L.H.C.C. PSR, ¶ 28. This time she claimed to have a diploma from George Washington University, earning a Master's of Science in nursing. PSR, ¶ 29. She again used the name and Michigan nursing license of the victim, L.T.C.P. PSR, ¶ 28. C.H.G. fortunately discovered her true identity shortly into her orientation period and reported it to the Michigan State Police. MSP located the actual licensed nurse, L.T.C.P., at her employment in West Michigan and she confirmed that she had no relationship with Defendant and had not given Defendant or anyone else the permission to use her name or nursing license. PSR, ¶ 31.

Defendant ultimately pled guilty to count 2 of the indictment alleging identity theft related to her use of L.T.C.P.'s name and Michigan nursing license and count 3 alleging she made materially false statements related to health care matters. She was released on bond with specific conditions that: 1) she was to remain in the Western District of Michigan unless she had the prior consent of the Pretrial Services Office; and, 2) prior approval in writing from Pretrial Services for any employment, which could not include employment in the healthcare setting. ECF 8, Bond, PageID.24. Defendant ignored both conditions.

In January 2024, she left Michigan and went to Illinois. She again obtained employment in the healthcare setting, in violation of her bond, this time as a Physician Assistant. PSR, ¶ 14. She used the name and Illinois Physician Assistant license of victim M.C. to obtain employment at a medical clinic in Park Ridge, Illinois. She used a counterfeit Illinois driver's license in the name of the victim, M.C. Ex. 1, Redacted Police Report, Park Ridge IL, p.7. While employed, she administered shots of the weight loss/blood sugar control drug, Semaglutide, Botox and other shots and infusions. *Id.*, see also, Ex. 1, p.6. Park Ridge police interviewed M.C. who confirmed that she did not know the Defendant and had not given her, or anyone else, permission to use her

medical license. PSR, ¶ 15. An employee of the Illinois clinic, J.M., confirmed that he had concerns about Defendant from the beginning because "she did not use proper medical terms when describing procedures and always seemed very nervous . . ." Ex. 1, p.7.

## III. LEGAL ARGUMENT AND AUTHORITIES

### A. The Sentencing Guidelines

There are three sentencing guideline issues for resolution by this Court. Two of these arise out of Defendant's violation of her bond (acceptance of responsibility and obstruction of justice) and the other involves application of the enhancement for conscious or reckless risk of death or serious bodily harm. Probation has recommended assessing Defendant with 2-levels for obstruction of justice and 2-levels for conscious or reckless risk of death or serious bodily harm, as well as denying her the initial 2-level decrease for acceptance of responsibility. The government supports the position of the probation officer.

#### 1. Defendant's Assessment and Treatment of Patients and Supervision of Other Medical Personnel Without Proper Licensure or Training Justifies the Enhancement for Conscious or Reckless Risk of Serious Bodily Harm

The sentencing guidelines provide for a two-level enhancement for a defendant who engages in conduct that constitutes a conscious or reckless risk of serious bodily harm. USSG § 2B1.1(b)(15). In order for this enhancement to apply, the United States must prove that defendant's conduct created a risk of death or serious bodily injury by a preponderance of the evidence. *United States v. Moon*, 513 F.3d 527, 541 (6th Cir. 2008). The United States need not

show that the defendant's conduct *actually* caused serious bodily injury or death, but only a *risk* that such consequences could occur. *United States v. Vivit*, 214 F.3d 908, 921 (7th Cir. 2000)("In cases of fraud, where [the enhancement] applies, we are not concerned with whether

actual injury occurred, but whether the defendant's fraudulent course of conduct created a risk that others would suffer serious bodily injury."); *United States v. Turner*, 102 F.3d 1350, 1358 (4th Cir. 1996)("The guideline asks if there was a risk . . ., not whether serious bodily injury actually directly resulted from the defendant's behavior.")

The Probation Officer has properly cited to additional authorities applying this enhancement in the context of the medical field. PSR, PageID.194, citing, *United States v. Redman,* 887 F.3d 789 (7th Cir. 2018); *United States v. Vivit*, 214 F.3d 908 (7th Cir. 2000); *United States v. Awad*, 551 F.3d 930 (9th Cir. 2009). *Awad* and *Vivit* stand for the proposition that a physician who is properly trained but fails to supervise less-skilled or less-trained individuals performing procedures, or fails to perform his own legitimate medical examinations, places his patients at risk of harm sufficient to justify the enhancement. It seems entirely logical that an individual who is not properly trained but is pretending to be a qualified and licensed medical professional also consciously or recklessly creates a serious risk of bodily harm when assessing a patient. And that is exactly what Defendant was doing.

Her job as a nurse included the assessment of patients to determine the course of treatment, administering medications (including narcotics), starting intravenous lines, among others. PSR, ¶ 35. This alone would justify the enhancement, but Defendant's conduct went even further. She supervised and oversaw others in their care and treatment of patients. PSR, ¶ 24. In that capacity, she not only exposed one patient to serious risk, but exposed all of the patients that others were seeing to serious risk as she made judgment calls about care and treatment that she was not qualified to make.

Defendant argues that the enhancement should not apply because she fortunately did not hurt anyone. However, the inquiry is *risk* of harm, not *actual* harm. And she further argues that

she did have some medical training and never intended to hurt anyone. However, she does not dispute that she was not properly trained and licensed. Both of those qualifications – training through appropriate medical curriculum and licensure – exist to make sure that the risk of harm is minimized when a medical professional encounters a patient. And her educational background is anything but established. She claims she attended some courses as a Medical Assistant at the Grand Rapids Educational Center in 1998 and produced a Diploma of Graduation. PSR, ¶ 108. Even if true, that work as a medical assistant certainly does not qualify her to render care as a registered nurse. Her claims about education at Davenport and George Washington University proved to be false and her "degree" from Belford University appears to be nothing but a pay-for-credits scheme based on life experiences. Contrary to her claims, she had no background or training sufficient to avoid a serious risk of harm to her patients.

Finally, she claims "on-the-job" type nursing experience that insulated patients against risk. It is difficult to fathom giving her credit for such experience when it was clearly obtained through her criminal impersonation schemes. However, it is clear that her "on-the-job" experience did not minimize the risk she created. She was demoted at L.H.C.C. because her performance was insufficient. PSR, ¶ 25. And an employee at the facility in Park Ridge noted that she was always nervous and did not appear to know basic medical terminology. Ex.1, pg. 7.

For all these reasons, the Probation Officer's application of the enhancement should be upheld.

**2. Defendant Obstructed Justice by Absconding on Bond and Failing to Appear for Sentencing**

The defendant does not object to the application of this enhancement as applied by the Probation Officer for her conduct in absconding on bond, committing a nearly identical new

offense in Illinois and causing delay in her sentencing and punishment. The government agrees that the two-level increase for obstruction is appropriate.

**3. Defendant Has Not Accepted Responsibility Given Her Post-Plea Conduct**

The Probation Officer denied Defendant a two-level reduction for her acceptance of responsibility based on her conduct in absconding while on bond, committing a nearly identical offense, and obstructing the sentencing phase of her case. PSR, ¶ 47. Commentary to the applicable guideline, U.S.S.G. § 3E1.1, provides that "conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both § § 3C1.1 and 3E1.1 may apply." U.S.S.G. § 3E1.1, cmt. n.4. When a district court denies a defendant acceptance of responsibility, in part because he obstructed justice, the court's determination of whether defendant's case is an extraordinary case is a question of law reviewed de novo. *United States v. Gregory*, 315 F.3d 637, 640 (6th Cir. 2003) (citing *United States v. Harper,* 246 F.3d 520, 525 (6th Cir. 2001)). However, "Sixth Circuit law interpreting this provision has consistently granted district courts great leeway when making this determination." *Id.*, quoting *United States v. Roberts,* 243 F.3d 235, 241 (6th Cir. 2001).

A defendant bears the burden of demonstrating extraordinary circumstances justifying acceptance of responsibility in the face of obstruction of justice. *United States v. Cobb*, 766 Fed App'x 226, 229 (6th Cir. 2019). "It is rare that a defendant should be granted a reduction in offense level for acceptance of responsibility when the court has deemed it appropriate to increase her offense level for obstruction of justice." *United States v. Wilson,* 197 F.3d 782, 786 (6th Cir. 1999) quoting *United States v. Defeo*, 36 F.3d 272, 277 (2d Cir. 1994). "Courts have employed an exacting standard to determine whether a defendant has accepted responsibility after having

obstructed justice." *Gregory*, 315 F.3d at 640 quoting *United States v. Williams*, 940 F.2d 176, 183 (6th Cir. 1991).

The Sixth Circuit has routinely upheld the denial of acceptance of responsibility where the obstructive conduct was ongoing and inconsistent with the principles of acceptance. For example in *United States v. Cobb*, 766 Fed. App'x 226 (6th Cir. 2019), this Court upheld the district court's denial of acceptance because unlike the obstructive conduct in *United States v. Williams,* 176 F.3d 301, 311 (6th Cir. 1999) and *United States v. Gregory*, 315 F.3d 637, 641 (6th Cir. 2003), where "there was a singular attempt by the defendant to obstruct justice that was quickly and completely remedied before law enforcement (in *Gregory*) or the district court (in *Williams*) was led astray," Cobb lied to probation after his indictment and did not remedy the situation until the probation officer recommended denial of acceptance and a four-level increase for his role in the offense." *Id.*, 230. And absconding or attempting to abscond is also obstructive conduct inconsistent with acceptance of responsibility. *United States v. Sanders*, 501 F. App'x 455, 458-59 (6th Cir 2012) (denying acceptance to a defendant despite his guilty pleas to several counts because "his conduct in cutting his ankle bracelet and fleeing the jurisdiction was inconsistent with acceptance of responsibility").

Here, Defendant's obstructive conduct is still ongoing. And it included yet another episode of Defendant using the name and license of another medical professional to gain employment, all while on bond awaiting sentencing for a similar offense with a bond condition that barred her from working in any capacity in a healthcare setting. Defendant has not argued that this is the extraordinary case where acceptance of responsibility should be applied despite application of the obstruction enhancement, nor is there any basis for that conclusion. To the contrary, everything

Defendant did is inconsistent with her acceptance of responsibility and the Probation Officer correctly withdrew her acceptance of responsibility reduction.

**B. This Court Should Upwardly Vary to Account for Circumstances not Accounted For by the Sentencing Guidelines**

The Probation Officer has recommended an upward variance of two-levels, or 10 months, on count 3, increasing the Defendant's sentence from the guideline range of 33 to 41 months to 51 months' imprisonment. The government concurs with this recommendation.

There are several reasons why the guidelines do not fully capture Defendant's conduct and consideration of the § 3553(a) factors justify an upward variance. First, Defendant's repeated criminal conduct. Her criminal history is replete with the same offense conduct: impersonation of medical professionals. By the government's count, because her conviction in the Southern District of Texas included four separate incidents of impersonation on top of convictions in Michigan and county court in Texas for other incidents of the same type, the conduct in this case involves the 7th (L.H.C.C.), 8th (C.H.G.) and 9th (Park Ride IL event) times she has committed the same type of offense. Specific deterrence requires something more than a guideline sentence given her incredible course of conduct. It is clear that to date she has had zero respect for the law.

Second, she is an extreme danger to the public. Someone not only willing to impersonate a medial professional but to have the audacity to seek a position managing other medical personnel presents a serious risk. It is just a matter of time before her antics truly injure someone.

Third, her actions while on bond in this case. Absconding by leaving the district without permission certainly justifies obstruction points and a withdrawal of acceptance of responsibility. But Defendant did much more. She not only absconded, but she also committed the same offense for which she was awaiting sentencing by impersonating yet another medical professional (this time a Physician Assistant). Her actions caused yet another potential victim, the real Physician

Assistant whose name and license she used. And she exposed yet another group of patients to potential harm by administering Botox and other shots to them while not being qualified to do so.

This is not the "mine-run" case in the "heartland" of the guidelines where a variance should be more closely examined. See, *United Staes v. Perez-Rodriguez*, 960 F.3d 748, 754 (6th Cir. 2020). Although this court should "consider the extent of the deviation [from the guidelines] to ensure that the justification is sufficiently compelling to support the degree of variance," *Id.,* given the aggravating factors presented in this case, the mere two-level increase recommended by the Probation Officer is clearly appropriate.

## IV. CONCLUSION

For all these reasons, the United States respectfully requests that this Court uphold the sentencing guideline calculations of the Probation Officer, and sentence Defendant to the recommended 51 months' imprisonment on count 3, followed by the mandatory consecutive term of 24 months' imprisonment on count 2, for a total of 75 months' imprisonment.

MARK A. TOTTEN
United States Attorney

Date: July 11, 2024

/s/ Ronald M. Stella
RONALD M. STELLA
Assistant United States Attorney
P.O. Box 208
Grand Rapids, Michigan 49501-0208
(616) 456-2404