UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

LETICIA GALLARZO,

Defendant.
______________________________________/

Case No.: 1:23-cr-118

Hon. Paul L. Maloney
United States District Judge

**DEFENDANT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

On January 26, 2026, this Court will sentence Leticia Gallarzo for her convictions of one count of Aggravated Identity Theft (Count 2), contrary to 18 U.S.C. § 1028A(a)(1), and one count of False Statements Relating to Health Care Matters (Count 3), contrary to 18 U.S.C. § 1035, following her guilty pleas to those counts of the indictment. The sentencing guidelines as calculated by the United States Probation Department call for a sentence between 33 and 41 months imprisonment as to Count 3, and a statutory mandatory minimum sentence of 24 months imprisonment as to Count 2, to run consecutively (as required by the statute) to the sentence on Count 3. Further, the probation department recommends a four-level upward variance under 18 U.S.C. § 3553(a), based on Ms. Gallarzo's prior convictions for similar conduct and her performance on bond in this case. Should the Court follow the probation department's recommendation for a four-level upward variance, the sentencing guidelines would become 51 to 63 months. The probation department recommends a sentence of 60 months as to Count 3, in addition to the consecutive 24-month sentence as to Count 2, for a total of 84 months.

Ms. Gallarzo has two outstanding objections to the calculated guidelines: the two-level

enhancement under USSG §2B1.1(b)(16)(A) for the offense involving the conscious or reckless risk of death or serious bodily injury, and the denial of the two-level reduction for acceptance of responsibility. Additionally, Ms. Gallarzo objects to the probation department's recommendation, and the government's support of, an upward variance.

Ms. Gallarzo submits that her adjusted offense level should be 12, not 16, because her offense conduct did not create a risk of death or serious bodily injury, and she fulfilled the necessary requirements to receive at least a two-level reduction for acceptance of responsibility. Should the Court sustain Ms. Gallarzo's objections, and deny the government's request for an upward variance, her guidelines on Count 3 would be 21 to 27 months, in addition to the mandatory 24-month sentence for Count 2.

**BACKGROUND**

Many facts in this case are not in significant dispute. Ms. Gallarzo used the nursing license and name of a real individual and registered nurse ("LTCP") to obtain employment at several facilities in Michigan, and in the course of that employment, represented herself as a registered nurse, without the necessary education or licensing to be a registered nurse. In applying to these positions, Ms. Gallarzo represented that she had obtained a nursing degree, and for at least one application, provided a falsified diploma, using the name of LTCP. (PSR, ¶ 30, 37). In at least one of these positions, Ms. Gallarzo's served as a unit manager, and her job responsibilities included assessments, administering medication (including narcotics), starting intravenous lines (IV), pulling peripherally inserted central catheter (PICC) lines, checking vital signs if someone coded, and supervising Certified Nursing Assistants. (PSR, ¶ 43). Ms. Gallarzo was charged via complaint in the instant case on August 1, 2023, and indicted on September 26,

2023. (ECF Nos. 1, 18). Ms. Gallarzo entered guilty pleas on November 7, 2023, and participated in a presentence investigation interview, where she admitted to her conduct. (PSR, ¶ 8, 51).

In January 2024, while on bond for this case, Ms. Gallarzo left this district to get away from her abusive husband, and first went to Chicago, where she obtained employment as a physician's assistant at CN Medical Aesthetics & Wellness, using the name and identity of a real individual who was licensed as a physician's assistant. (PSR, ¶ 14). According to an employee at the practice, Ms. Gallarzo administered Vitamin B12 and Semaglutide shots to patients.[1] Pretrial Services was unable to reach Ms. Gallarzo from that point until her recent arrest. Following her stint in Chicago, Ms. Gallarzo made her way to California with her two youngest children, where she obtained employment as a registered nurse, using the name and nursing license of a real registered nurse in California. (PSR, ¶ 16). Ms. Gallarzo does not dispute this conduct. She was arrested in California on September 22, 2025. (PSR, ¶ 16).

Also not in dispute is Ms. Gallarzo's prior criminal history for similar conduct. Ms. Gallarzo has one prior federal conviction in 2017 from the Southern District of Texas for False Statements Relating to Healthcare Matters, for which she was sentenced to 14 months imprisonment (and later, an additional 14 months when her supervised release was revoked), and two prior state convictions in 2015 and 2016 from Texas and Michigan for practicing nursing without a license and identity theft, respectively. (PSR, ¶¶ 76-78).

Ms. Gallarzo further does not dispute that she does not have a legitimate nursing degree or license, although she did attend an online institution that was later dissolved, and additional

[1] The facility's website, under the "Services" tab, appears to provide weight loss, cosmetic, and skincare treatments only. https://mycnmedical.com/services/

education through other forums. She attended Belford University, an online institution, from 1996 until 2000, earning a bachelor's degree in nursing. (PSR, ¶ 115). Ms. Gallarzo provided to the probation department a certificate stating she graduated with a Bachelor of Science in Nursing on May 7, 2002. At the time she received this diploma, Ms. Gallarzo was unaware that the university was not legitimate, and attended the university believing that she would obtain a nursing license. However, she takes responsibility for the fact that after she could not obtain a nursing license with her "degree," she continued to represent herself as having obtained the necessary education and license to practice as a registered nurse, when she should not have. Ms. Gallarzo also attended Davenport University, Grand Rapids, in 2002, where she studied as a medical assistant and earned 18 credits with a grade point average of 1.92, and received formal training as a Medical Assistant through the Grand Rapids Educational Center in 1998. She provided a Diploma of Graduation from the facility, dated August 10, 1998. (PSR, ¶ 116, 117). However, Ms. Gallarzo acknowledges that none of this education amounts to a nursing degree, and that she was not licensed as a registered nurse.

## ARGUMENT

### I. Ms. Gallarzo Objects to the Two-Level Enhancement Under USSG §2B1.1(b)(16)(A), Because Her Conduct Did Not Create a Risk of Death or Serious Bodily Injury.

USSG §2B1.1(b)(16)(A) provides that if the offense involved the conscious or reckless risk of death or serious bodily injury, two levels are added. USSG §1B1.1 defines "serious bodily injury" as involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation. Here, the government argues that Ms. Gallarzo's job as

a registered nurse, for which she did not have the required training or licensing, created such a risk. The government does not have to prove that the defendant caused such harm, but must prove that the defendant created the risk of such harm. *United States v. Vivit*, 214 F.3d 908, 921 (7th Cir. 2000) ("In cases of fraud, where [the enhancement] applies, we are not concerned with whether actual injury occurred, but whether the defendant's fraudulent course of conduct created a risk that others would suffer serious bodily injury."); *United States v. Turner*, 102 F.3d 1350, 1358 (4th Cir. 1996)("The guideline asks if there was a risk . . ., not whether serious bodily injury actually directly resulted from the defendant's behavior.")

Here, Ms. Gallarzo's duties included administering medications, starting IV lines, checking vital signs, conducting assessments of patients, and supervising other nurses when she served as a unit manager. And while those duties are certainly important, and should not be done by those without any medical training, the government has not provided any evidence that Ms. Gallarzo ever created the risk of serious bodily injury "involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation" in performing those duties. USSG §1B1.1. Ms. Gallarzo provided documentation that she did receive some kind of medical training, and although it was insufficient to grant her a nursing license, the government has not provided evidence that Ms. Gallarzo was entirely incapable of performing her duties without creating a risk of catastrophic harm, other than the undisputed fact that she was not formally educated or licensed as a nurse. And while Ms. Gallarzo's education was not enough to get her a nursing license, she submits that it was enough to allow her to perform her job duties safely, and that she did not create the kind of risk that USSG §1B1.1 describes.

## II. Ms. Gallarzo Should Receive a Reduction for Acceptance of Responsibility.

The probation department and the government contend that Ms. Gallarzo should be denied a reduction for acceptance of responsibility, based on her absconding while on bond and committing two new offenses, both essentially the same as the instant offense – for which Ms. Gallarzo has received, and is not objecting to, a two-level enhancement for obstruction of justice. (PSR, ¶ 63).

U.S.S.G. §3E1.1 provides that if the defendant "clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels," and that the defendant may receive an additional third level, upon motion by the government, if the government states that "the defendant has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. §3E1.1. The commentary to the guideline provides that "Entry of a plea of guilty prior to the commencement of trial combined with truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which he is accountable under §1B1.3. . . will constitute significant evidence of acceptance of responsibility for the purposes of subsection (a)," but that "this evidence may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.,* Cmt. 3.

The Sixth Circuit has held that "[t]he defendant bears the burden to demonstrate acceptance of responsibility by a preponderance of the evidence." *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013). The test for determining whether the defendant has met that burden is a "two-step

inquiry: first, whether the defendant has demonstrated significant evidence of acceptance of responsibility; and second, whether that evidence is outweighed by conduct inconsistent with such acceptance." *United States v. Hollis*, 823 F.3d 1045, 1047 (6th Cir. 2016). As to the first prong of the inquiry, "[t]he guidelines recognize that the combination of three acts—pleading guilty before trial, truthfully admitting the conduct comprising the offense of conviction, and truthfully admitting or not falsely denying any additional relevant conduct—is one way in which a defendant can demonstrate significant evidence of acceptance of responsibility." *Denson* at 614.

Here, Ms. Gallarzo has completed all three acts identified in *Denson* that demonstrate "significant evidence of acceptance of responsibility." She pled guilty within two months of the indictment, made a truthful factual basis to the offense, both in the written plea agreement and at her plea hearing, and has not denied any additional relevant conduct. As to the second prong, the evidence that seeks to outweigh the evidence supporting acceptance of responsibility is Ms. Gallarzo's absconding on bond and her commission of similar conduct while she absconded. And while her conduct is certainly unacceptable, it is not inconsistent with acceptance, nor is it enough to outweigh the evidence that supports a reduction for acceptance of responsibility. Further, it has been punished already with the enhancement for obstruction of justice, to which Ms. Gallarzo does not object. In contrast to Ms. Gallarzo's timely guilty plea, there are there are those defendants who waste the Court and the government's time and resources, and enter a guilty plea on the eve of trial, despite overwhelming evidence against them. Indeed, the reduction for acceptance of responsibility is meant to address that, and to recognize those defendants who take responsibility for their actions. Ms. Gallarzo did so, and should receive credit for it.

## III. Ms. Gallarzo Objects to the Recommendation For an Upward Variance, and Asks the Court to Consider a Sentence Within the Guidelines.

Ms. Gallarzo knows that her continuous history of representing herself and obtaining employment as a registered nurse, often using the identities of real individuals, heavily weighs against her, and that there is no excuse for her repeated conduct. However, she asks the Court to consider whether a sentence above the guidelines will serve the purposes of sentencing, and whether a sentence within the guidelines will suffice, especially considering the mandatory two-year consecutive sentence that Count 2 carries.

It is clear, from both her mental health history and her repeated conduct, that Ms. Gallarzo is a troubled individual, who has and is suffering from depression, anxiety, post traumatic stress disorder, and has been a victim of domestic violence. (PSR, ¶¶ 94, 103-110). These problems were exacerbated by the death of her son, aged 22 years, in 2020. Ms. Gallarzo struggled to cope with his sudden loss, as did the rest of her family. (PSR, ¶ 92). At the same time, she tried to care for her two youngest children, now aged 12 and 17 years, and currently reside with Ms. Gallarzo's parents in California. She is fortunate to still have the support of her two adult sons, but much of Ms. Gallarzo's family and friends no longer support her, because of her repeated conduct. The significant sentence she now faces – more imprisonment than she has ever faced before – and the position she has placed herself in, weighs heavily on her. She maintains that she never intended to, and would not have, hurt any patients, and that she wanted to create a better life for herself and her family that a job as a nurse would provide. More than that, she loved taking care of people, and felt she was doing something important. However, she now recognizes that her conduct, especially after being punished for it in the past, is unacceptable, and that her reasons for committing this offense are irrelevant. She understands now that she cannot unilaterally decide

whether she is qualified to provide care, and that rules and regulations exist for a reason. While she is in custody, she hopes to receive educational and vocational training as an aesthetician, so that she can legitimately take care of people and earn a living doing so once she is released. She stands ready to face this Court's punishment, but asks the Court to consider whether a lengthy prison sentence will provide the rehabilitation and treatment she clearly needs to stop committing this conduct, once and for all. She asks for a sentence within the guidelines that is sufficient, but not greater than necessary, to satisfy the needs of sentencing.

**CONCLUSION**

For the foregoing reasons, Ms. Gallarzo asks this Court to grant her objections.

Respectfully Submitted,

Dated: January 12, 2026

s/ Rachel L. Frank
Rachel Frank Law, PLLC
300 Ottawa Ave NW, Suite 810
Grand Rapids, MI 49503
(616) 229-0563
rachel@rachelfranklaw.com